# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARLA LITTLE, ) | |
| ) | |
| Plaintiff, ) | Case No. 16-CV-10377 |
| ) | |
| v. ) | Hon. Amy J. St. Eve |
| ) | |
| ILLINOIS DEPARTMENT OF ) | |
| PUBLIC HEALTH, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On June 13, 2017, Plaintiff Carla Little ("Little") brought the present Complaint against Defendant, Illinois Department of Public Health ("IDPH"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 612 *et seq.* ("ADEA"), and 42 U.S.C. § 1981 ("1981"). Before the Court is Defendant's motion to dismiss brought pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6). For the following reasons, the Court grants in part and denies in part Defendant's motion.

## BACKGROUND

Plaintiff, Carla Little, is a 54-year-old African-American female who resides in Lake County, Illinois. (R. 1, Compl. ¶¶ 4, 11.) Plaintiff alleges that Defendant's employees harassed and retaliated against her on the bases of her race, sex, and age. (*Id.* ¶ 7.)

In February 2004, Defendant hired Plaintiff as a Laboratory Research Scientist, and she currently is a Public Service Administrator Option 6F with IDPH. (*Id.* ¶¶ 12-13.) Plaintiff claims that her job performance meets Defendant's expectations based on evaluations. (*Id.* ¶ 14.) Starting in January 2015, Plaintiff made several reports "regarding being harassed by her

1

Supervisors and those in superior positions than her." (*Id.* ¶ 15.) Specifically, between February 2015 and the present, Plaintiff alleges that she complained internally to Mark Edminston, Win Rawls, Erik Rayman, Allan Abinoja, and other managers and directors at IDPH. (*Id.* ¶ 37.) Plaintiff also alleges that she complained externally to Governor Rauner. (*Id.* ¶ 38.) Regardless of these complaints, Defendant failed to take any corrective action. (*Id.* ¶ 16.) Plaintiff alleges that Defendant increased surveillance on Plaintiff, intentionally withheld necessary information, tools, and documents Plaintiff needed to perform her job effectively, purposely set Plaintiff up to fail, intimidated and abused Plaintiff, and isolated Plaintiff. (*Id.* ¶ 17.)

Specifically, Plaintiff alleges that IDPH employees have accused her of running up excessive miles on rental cars and falsifying reimbursement and travel documents. (*Id.* ¶ 19.) Additionally, Plaintiff complained that Deborah Usherwood intentionally delayed submitting Plaintiff's travel vouchers in June 2015, and Michelle Gentry-Wiseman suggested and approved multiple allegedly unjustified disciplinary actions for Plaintiff. (*Id.* ¶¶ 18, 20.) Plaintiff also alleges that, as the result of Gentry-Wiseman's orders, Defendant subjected her to an unjustified disciplinary action resulting in a two-day suspension. (*Id.* ¶¶ 21–22, 27.) Plaintiff claims that Erik Rayman changed her reporting structure so that she reported to Gina Swehla, a Caucasian, instead of her previous African American supervisor. (*Id.* ¶ 40.) Plaintiff alleges that Defendant's employees have subjected her to ongoing harassment under the Swehla's supervision. (*Id.* ¶ 41.) Swehla, for example, gave several of Plaintiff's job duties and assignments to Jennifer Reid and several other inexperienced interns. (*Id.* ¶ 46.) After Plaintiff expressed concern about the importance of the assignments and the preparedness of the interns, Swehla left the interns in control of the assignments, causing embarrassment to Plaintiff. (*Id.* ¶¶ 47–48.) Further, Plaintiff alleges that Defendant did not equally enforce its policies, terms and

conditions, job duties, travel voucher requests, and travel reimbursement policies across employees of all races. (*Id.* ¶ 57.) Finally, Plaintiff alleges that her age, sex, and race motivated Defendant's actions. (*Id.* ¶¶ 1, 49, 57.)

On October 5, 2015, Plaintiff filed a charge against Defendant with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 6.) Before March 8, 2017, Plaintiff signed a voluntary withdrawal request form with the Illinois Department of Human Rights and requested a right to sue letter. (*Id.* ¶ 8.) On April 17, 2017, Plaintiff received a Notice of Right to Sue letter from the U.S. Department of Justice Civil Rights Division. (*Id.* ¶ 9.)

## LEGAL STANDARD

### I. 12(b)(6) and 8(a)

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded

facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## II. 12(b)(1)

A Rule 12(b)(1) motion challenges federal jurisdiction, and the plaintiff bears the burden of establishing the elements necessary for jurisdiction, including standing, have been met. *Scanlan v. Eisenberg,* 669 F.3d 838, 841–42 (7th Cir. 2012). For purposes of a motion to dismiss under Rule 12(b)(1), the Court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *Id.* at 841. In ruling on a Rule 12(b)(1) motion, the Court may look outside of the complaint's allegations and consider the parties' evidence on the issue of jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks omitted).

## ANALYSIS

In its Motion to Dismiss, Defendant argues that the Court should dismiss (1) Counts I and III due to Plaintiff's failure to exhaust her administrative remedies; (2) Counts I, II, and III for failure to state a claim; and (3) Count IV because the Eleventh Amendment bars claims under §§ 1981 and 1983. The Court addresses each argument in turn.

## I. Exhaustion

In Counts I and III, Plaintiff alleges that Defendant discriminated against her on the basis of her sex and race in violation of Title VII and age in violation of the ADEA. Defendant argues that Plaintiff's Complaint does not specify when various alleged acts of discrimination occurred, and to the extent those acts occurred after October 5, 2015, when Plaintiff filed her EEOC charge, those acts may not support her claims because a plaintiff cannot bring federal claims that she did not include in her EEOC charge. Because Plaintiff failed to specify whether the acts

4

underlying her claims occurred before or after she filed her EEOC charge, Defendant argues that the Court should dismiss Plaintiff's claims for failure to exhaust her administrative remedies.[1] Plaintiff responds that because she checked a box indicating that her harassment was a "continuing action" on her EEOC charge she can allege actions that occurred after October 5, 2015 without having failed to exhaust her remedies.

"The proper scope of a judicial proceeding following an EEOC charge 'is limited by the nature of the charges filed with the EEOC.'" *Hopkins v. Bd. of Educ. of City of Chi.*, 73 F. Supp. 3d 974, 982 (N.D. Ill. 2014) (citing *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir. 1992). Specifically, "a plaintiff may only bring claims that are originally included in the EEOC charge or are 'reasonably related to the allegations of the EEOC charge and growing out of such allegations.'" *Id.* (citing *Moore v. Vital Prods., Inc.,* 641 F.3d 253, 256–57 (7th Cir. 2011) (internal quotations omitted)). Put differently, plaintiffs can only pursue claims in civil proceedings in federal court "that could reasonably be expected to grow out of the administrative charges." *Reynolds v. Tangherlini*, 966 F.3d 1093, 1099–100 (7th Cir. 2013); *see also Dear v. Shinseki,* 578 F.3d 605, 609 (7th Cir. 2009). "Courts review the scope of an EEOC charge liberally." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015) (citation omitted). At a minimum, the claim and the administrative charge must "describe the same conduct and implicate the same individuals." *Id.* at 831-32 (*Moore*, 641 F.3d at 257). Additionally, evidence of a "continuing violation" may be considered as part of a hostile work environment claim, because a hostile environment is one single wrong. *See Pruitt v.*

---

[1] Defendant does not dispute that Plaintiff has met the technical exhaustion requirements necessary to bring Title VII and ADEA claims. Under those statutes, a plaintiff must file a complaint within 90 days of receipt of the right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1) (2012). Plaintiff alleged that she received the right-to-sue letter from the EEOC on April 14, 2017 and filed her complaint on June 13, 2017, within 90 days of receipt of the right-to-sue letter. Thus, Plaintiff has met this requirement.

*Chicago,* 472 F.3d 925, 927 (7th Cir. 2006) (citing *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110–15 (2002)).

Applying these standards, courts have allowed Title VII claims to proceed where the plaintiff's allegations included conduct that occurred after the plaintiff filed an EEOC charge as long as those later actions were part of a continuing pattern of mistreatment involving similar types of conduct and the same individuals. In *Hopkins*, 73 F. Supp. 3d at 983, for example, the court refused to strike the plaintiff's allegations that occurred after she filed her EEOC charge. The court explained that the plaintiff did not seek to "refer to later events as independently actionable violations, but rather refers to them as part of the same "campaign" of retaliatory harassment." *Id.* Accordingly, the court allowed the allegations to stand because the plaintiff's allegations sufficiently indicated that the actions that occurred after the filing of the EEOC charge contributed to the "single wrong" described in the EEOC charge. *Id.*; *see also Huri*, 804 F.3d at 832 (overturning dismissal of Title VII claim because it was "reasonably related" to the EEOC charge since it broadly alleged similar harassment and "implicate[d] the same individuals and behavior pertinent" to the Title VII claim); *Snow v. Bd. of Educ. of J. Sterling Morton High Sch. Dist. 201*, No. 16 C 2685, 2017 WL 478266, at *5 (N.D. Ill. Feb. 6, 2017) (allowing allegation of adverse action to stand even though it occurred after plaintiff filed EEOC charge because allegations supporting adverse action were "reasonably related" to allegations of discrimination and retaliation in EEOC charge); *Gallardo v. Chi. Transit Auth.*, No. 15 CV 7458, 2016 WL 7049055, at *2 (N.D. Ill. Dec. 5, 2016) ("A Title VII plaintiff need not include in his charge every fact that, individually or in combination, forms the basis of a subsequent lawsuit")

In contrast, courts have rejected claims where the allegedly discriminatory conduct that occurred after the plaintiff filed an EEOC charge was separate and distinct from the conduct

6

described in the EEOC charge. In *Curtis v. U.S. Postal Servs.*, No. 87 C 1333, 1988 WL 31545, at *1 (N.D. Ill. Mar. 31, 1988), for example, the court struck the allegations that occurred after the plaintiff filed his EEOC charge. The court explained that the later allegations involved "separate distinct acts and events directed at the plaintiff which may not be construed as a showing a single ongoing concerted activity on the part of the defendants." *Id.* Because the acts were distinct from those described in the EEOC charge and thus the EEOC had not had the opportunity to investigate them, the court refused to consider the later allegations. *Id.*; *see also Conner v. Illinois Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (rejecting claim based on non-promotion that occurred after EEOC charge for failure to exhaust).

Here, while Plaintiff's checking of the "continuing violation" box does not necessarily mandate that the Court deem her allegations part of one continuing violation,[2] Plaintiff nevertheless has, even without specific dates for certain conduct, sufficiently alleged that Defendant's conduct was all part of the single, continuing wrong that Plaintiff alleged in her EEOC charge. In Plaintiff's EEOC charge, filed October 5, 2015, Plaintiff alleged that Defendant's employees subjected her to harassment, discipline, and discrimination on the basis of her age, gender, and race. (Compl., Ex. A, EEOC Charge.) In her Complaint, Plaintiff has alleged that several instances of discriminatory conduct occurred in 2015 prior to her EEOC charge. Plaintiff alleges, for example, that she complained about harassment starting in January 2015, that her supervisor approved multiple unjustified disciplinary actions for Plaintiff in June 2015 and thereafter, that her supervisor changed her direct report from a Caucasian to an

---

[2] Plaintiff did not cite to any legal authority in claiming that checking the "continuing violation" box was proof that Defendant's conduct was a continuing violation, and indeed, the Seventh Circuit has held that "simple technicalities such as '[w]hat boxes, for instance, are checked on the EEOC form do not necessarily control the scope of a subsequent complaint.'" *Noreuil v. Peabody Coal Co.,* 96 F.3d 254, 259 (7th Cir. 1996) (*quoting Kristufek v. Hussmann Foodservice Co., Toastmaster Div.,* 985 F.2d 364, 368 (7th Cir. 1993)).

African-American supervisor, and Defendant was subjected to unjustified disciplinary hearings relating to incorrect time submissions and travel voucher submissions in September 2015. (*Id.* ¶¶ 15, 20-24, 40.)

Plaintiff's Complaint also contains many allegations that are not explicitly tied a specific time frame. Plaintiff, for example, does not allege when specifically she received a two-day suspension or on what dates her supervisor gave her job duties to younger, inexperienced interns. (*Id.* ¶¶ 27, 46-47.) As in *Hopkins*, 73 F. Supp. 3d at 983, however, viewing the allegations in the light most favorable to Plaintiff, she has sufficiently alleged that these undated actions arose out of the pattern of harassment and unjustified discipline she complained of in her EEOC charge and in the rest of her Complaint. Plaintiff's suspension, for example, arose out of an alleged pattern of unjustified disciplinary actions that occurred throughout the summer and fall of 2015 leading to formal pre-disciplinary proceedings in September 2015 and her EEOC charge in October 2015. This indicates that the conduct Plaintiff complained of in her EEOC charge was related to any allegedly post-EEOC charge conduct she alleged in her Complaint. *See Huri*, 804 F.3d at 831–32 (EEOC charges are reviewed "liberally" and to be "related" to EEOC charge allegations must "describe the same conduct").

Similarly, although Plaintiff did not include a date upon which her supervisor, Gina Swehla transitioned Plaintiff's job duties to younger, more inexperienced interns, it is plausible that this action was related to the alleged pattern of harassment complained of in her EEOC charge because Plaintiff alleges in her Complaint that Defendant changed her reporting structure such that Swehla, a white woman, replaced Plaintiff's previous African-American supervisor in September 2015, before Plaintiff filed her EEOC charge. The undated allegations thus involve the same individuals as her allegations that preceded the EEOC charge. *Id.* (to be "related" to

EEOC charge allegations must "implicate the same individuals"). Since Plaintiff's allegations sufficiently indicate that Defendant's conduct was part of a continuing, "single wrong," Plaintiff has not failed to exhaust her claims related to the undated conduct, even if that conduct occurred after her EEOC charge. *Hopkins*, 73 F. Supp. 3d at 983.

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's Title VII discrimination claim (Count I) and Plaintiff's ADEA discrimination claim (Count III) on the basis of exhaustion.

## II.   Count I—Title VII Discrimination Claim

In Count I, Plaintiff alleges that Defendant has discriminated against her on the basis of her sex and race in violation of Title VII of the Civil Rights Act of 1964. Defendant argues that the Court should dismiss this Count because it fails to provide Defendant with sufficient notice under Federal Rule of Civil Procedure 8(a) due to the alleged circular reasoning in Plaintiff's complaint.[3]

To state a claim for discrimination on the basis of sex or race, Plaintiff must show that Defendant subjected her to intentional discrimination based on her sex or race. Plaintiff must set out factual allegations that show: (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, and (3) there is a connection between membership in a protected class and the adverse employment action. *Martino v. Western & Southern Financial Group*, 715 F.3d 195, 201–02 (7th Cir. 2013) (citing *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). In a Title VII case the connection between membership in a protected class and an adverse employment action can be generally alleged. *Tamayo v. Blagojevich*, 526 F.3d

---

[3] In its motion to dismiss Counts I-III, Defendant only cites to Federal Rule of Civil Procedure Rule 8(a), but refers to the plausibility standard required in a motion to dismiss under Rule 12(b)(6). Regardless of Defendant's intentions, Plaintiff meets the higher burden under Rule 12(b)(6) for all three Counts, and thus, the result is the same.

1074, 1081 (7th Cir. 2008); *see also Leuvano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (a complaint alleging discrimination "need only aver that the employer instituted a specified adverse employment action against the plaintiff on the basis of her sex" or race) (internal citations omitted); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (a plaintiff need only "give enough details about the subject-matter of the case to present a story that holds together").

Plaintiff has alleged that she is African American and female, which are both protected classes under Title VII. In a Title VII discrimination case, "a materially adverse employment action is one which visits upon a plaintiff a significant change in employment status." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (internal quotation marks omitted). Plaintiff alleges that although her performance met Defendant's expectations, she suffered several adverse employment actions, including a two-day suspension, a change in her reporting structure, that Defendant subjected her to increased surveillance, that Defendant altered her job duties, and that Defendant withheld necessary information, tools, and documents that Plaintiff needed to perform her job effectively.

Several of the actions and conduct Plaintiff alleges in her Complaint can constitute adverse employment actions under Title VII. A suspension, for example, constitutes an adverse employment actions. *See, e.g.*, *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008) (finding "ten-day suspension was an adverse employment action"); *Russell v. Bd. of Trs. of the Univ. of Ill. at Chi.,* 243 F.3d 336 (7th Cir. 2001) (five-day suspension was materially adverse action); *Edwards v. Ill. Dep't of Fin.*, 210 F. Supp. 3d 931, 950 (N.D. Ill. 2016) (three-day suspension constitutes an adverse employment action) (citing *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005)); *Cole v. Bd. of Trustees of N. Ill. Univ.*, 38 F. Supp. 3d 925, 931 (N.D. Ill. 2014) (three-

day suspension constitutes adverse employment action). Similarly, courts have found that denying an employee the necessary equipment or materials to perform his job is an adverse employment action. *See, e.g.*, *Gallardo v. Chi. Transit Auth.*, No. 15 CV 7458, 2016 WL 3165768, at *2 (N.D. Ill. June 7, 2016) (finding that undetailed allegations that plaintiff did not receive same equipment or training that non-Hispanic employees received were sufficient to state a Title VII claim).

Given this case law, Plaintiff has sufficiently alleged that she is a member of a protected class and that Defendant took adverse employment actions against her. Plaintiff's allegations are sufficient to support a Title VII discrimination claim under the Seventh Circuit's lenient standards that require only that a plaintiff generally allege a connection between membership in a protected class and an adverse employment action. *Leuvano*, 722 F.3d at 1028 (a complaint alleging discrimination "need only aver that the employer instituted a specified adverse employment action against the plaintiff on the basis of her sex" or race); *Tamayo*, 526 F.3d at 1085 ("the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense"). Put simply, viewing the allegations in Plaintiff's favor, she has alleged "enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404.

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's Title VII discrimination claim (Count I).

### III. Count II—Title VII Retaliation Claim

In Count II, Plaintiff alleges that Defendant has retaliated against Plaintiff for participation in a protected activity. As with Count I, Defendant argues that the Court should

dismiss this Count because it fails to provide Defendant with sufficient notice under Federal Rule of Civil Procedure 8(a) due to the alleged circular reasoning in Plaintiff's complaint.

To state a claim for retaliation under Title VII, Plaintiff must show: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a connection between the protected activity and the adverse employment action. *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404 (7th Cir. 2007). In the retaliation context, "adverse employment action" "simply means an employer's action that would dissuade a reasonable worker from participating in protected activity." *Huri*, 804 F.3d at 833. Like in a Title VII discrimination case, it is sufficient for a plaintiff to generally allege the connection between a protected activity and an adverse employment action. *See Leuvano*, 722 F.3d at 1028.

Plaintiff has alleged that she engaged in the following protected activities: (1) internal complaints to Mark Edminston, Win Rawls, Erik Rayman, Allan Abinoja, and other management and directors between February 2015 and the present; (2) external complaints to the Executive Officer of the Inspector General and Governor Rauner between May and September 2015; and (3) an electronic complaint to the EEOC in October 2015. Plaintiff alleges that she made internal and external complaints prior to the disciplinary hearing and subsequent suspension, which, as discussed above, is considered an adverse employment action. These allegations are thus sufficient to state a Title VII retaliation claim because all a plaintiff must allege is that "she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Luevano*, 722 F.3d at 1029 (finding plaintiff sufficiently plead retaliation).

Notably, Plaintiff is not required to present proof of a causal connection between the protected activity and the adverse employment action, she only needs to generally allege that the

12

two are connected. *Id.* Additionally, suspicious timing is sufficient "to nudge a complaint from possible to plausible where the timing is close enough." *Cole*, 38 F. Supp. 3d at 932. Here, the protected activity—Plaintiff's consistent complaints about her unjustified discipline and mistreatment—occurred throughout the spring and summer of 2015, and the adverse action—her suspension—began with pre-disciplinary hearings that started in September 2015. These events are sufficiently close in time to render her retaliation claim plausible, especially when coupled with Plaintiff's allegations of additional adverse actions—denial of work materials, disciplinary actions, and reduced work responsibilities—following her earlier complaints. *Cole*, 38 F. Supp. 3d at 932 (Title VII retaliation claim sufficient where plaintiff alleged conclusory link between adverse action and complaints and action occurred close in time to complaints); *Am. Civil Liberties Union of Illinois v. City of Chi.*, No. 75 C 3295, 2011 WL 4498959, at *3 (N.D. Ill. Sept. 23, 2011) (denying motion to dismiss retaliation claim where adverse action was close in time to protected activity); *McCowan v. City of E. Moline*, No. 416CV04199SLDJEH, 2017 WL 4273293, at *6 (C.D. Ill. Sept. 26, 2017) (finding allegations of suspicious timing coupled with a pattern of retaliation sufficient to allege Title VII retaliation claim).

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's retaliation claim (Count II).

## IV. Count III—ADEA Discrimination Claim

In Count III, Plaintiff alleges that Defendant has discriminated against her on the basis of her age in violation of the ADEA. Again, Defendant argues that the Court should dismiss this Count because Plaintiff has failed to provide Defendant with sufficient notice under Federal Rule of Civil Procedure 8(a) due to the alleged circular reasoning in Plaintiff's complaint.

13

To state a claim for discrimination on the basis of age, Plaintiff must show that she was subjected to intentional discrimination based on her age. The test for ADEA discrimination is "virtually identical" to the framework for Title VII discrimination.[4] *Stone v. Brd. of Trustees of N. Ill. Univ.*, 38 F. Supp. 3d 935, 945 (N.D. Ill. 2014) (citing *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014))[5]; *see also Levin v. Madigan*, 697 F. Supp. 2d 958, 966 (N.D. Ill. 2010) (describing minimal pleading standard for age discrimination claim). Thus, at the motion to dismiss stage, a Plaintiff must set out factual allegations that show: (1) she is a member of a protected class, (2) she was qualified for the job; (3) she was subjected to an adverse employment action, and (4) there was a connection between membership in a protected class and the adverse employment action. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012); *Cooper v. Aslundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir. 1988); *Whitten v. Farmland Indus., Inc.*, 759 F. Supp. 1522, 1532 (D. Kan. 1991). Similar to a Title VII case, the connection between membership in a protected class and an adverse employment action can be generally alleged. *Stone*, 38 F. Supp. 3d at 946 (connections to age by conclusory allegations are sufficient). The Seventh Circuit has held that adverse employment actions "generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile

---

[4] As the court explained in *Stone*, while the Seventh Circuit has not explicitly extended its Title VII requirement that a plaintiff need only allege the causation element by conclusion to ADEA cases, since the ADEA and Title VII draw on the same test and since there is no authority indicating the Seventh Circuit's reasoning does not apply to ADEA cases, there is a presumption that the same causation reasoning applies in ADEA cases. *Stone*, 38 F. Supp. 3d 945 n. 3 (citing *Atanus v. Perry,* 520 F.3d 662, 672 (7th Cir. 2008).
[5] *Andrews* was overruled on other grounds by *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011) (citation omitted).

Here, Plaintiff has sufficiently alleged that her age—54 years old—qualifies her for membership in a protected class under the ADEA and that her performance met Defendant's expectations throughout her employment. Plaintiff, however, has not sufficiently alleged that she suffered an adverse employment action. While Plaintiff incorporated her prior allegations into her ADEA claim, the only adverse employment action allegations that are connected to her age relate to an incident where Gina Swehla, her supervisor, reassigned Plaintiff's job duties and assignments to Jennifer Reid and other younger, inexperienced interns despite Plaintiff's warnings that these younger interns were not prepared to handle the assigned responsibilities. (Compl. ¶¶ 45-48.)

Actions such as a reassignment of duties or an undesirable job reassignment can qualify as "adverse employment actions due to their impact on the terms, conditions or privileges of employment," however, not "everything that makes an employee unhappy is an actionable adverse action." *Peyus v. Lahood*, 919 F. Supp. 2d 93, 101 (D.D.C. 2013) (quoting *Baird v. Gotbaum,* 662 F.3d 1246, 1250 (D.C. Cir. 2011)); *see Faragher v. City of Boca Raton,* 524 U.S. 775, 808 (1998). Here, Plaintiff has not alleged that Defendant's reassignment of certain unspecified duties impacted the "terms, conditions, or privileges of [her] employment," *Peyus*, 919 F. Supp. 2d at 101, or "cause[d] [her] skills to atrophy and reduce future career prospects." *Barton*, 662 F.3d at 453–54. Plaintiff has merely alleged that her supervisor gave some of her assignments to younger co-workers, but "the loss of some job responsibilities [without more] does not qualify as an ultimate [adverse] employment decision." *Williams v. U.S. Dep't of the Navy,* 149 F. App'x 264, 269–70 (5th Cir. 2005) (finding no adverse action where employer

15

reassigned 20% of the plaintiff's workload to a new coworker); *see also Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) ("changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes"); *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (rejecting ADEA claim because change in duties "involving no reduction in pay and no more than a minor change in working conditions" does not constitute adverse employment action); *Simmons v. Navy Fed. Credit Union,* No. C–10–14, 2011 WL 2078528 (S.D. Tex. May 26, 2011) (reassignment of duties to younger employees insufficient to state adverse employment action under ADEA absent a corresponding demotion or reduction in benefits).

In sum, viewing the allegations in Plaintiff's favor, she has failed to sufficiently allege that Defendant took an adverse employment action against her because she has failed to even generally allege that Defendant's reassignment of some of her unspecified duties impacted the terms or conditions of her employment or her future career prospects. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's ADEA discrimination claim (Count III) without prejudice.

## V.     Plaintiff's Claims Pursuant to 42 U.S.C. § 1981[6]

Defendant argues that the Court should dismiss Plaintiff's §§ 1981 and 1983 claims because the Eleventh Amendment bars these claims. Defendant argues that the Illinois Department of Public Health is an agency of the State of Illinois, and, therefore, is treated as the State for purposes of Eleventh Amendment immunity. In response, Plaintiff argues that her

---

[6] Plaintiff invokes jurisdiction under 42 U.S.C. § 1983, but she only seeks damages pursuant to 42 U.S.C. § 1981 and only mentions § 1981 in her substantive claims. (R. 1, Compl. ¶¶ 1-2, 54-59.) Regardless of the statute under which Plaintiff brings her claim, the result is the same, the Eleventh Amendment bars Plaintiff's claim.

interest in ending a continuing violation of a federal law—the ongoing race discrimination she has alleged—outweighs the Eleventh Amendment interest in state sovereignty.

Here, the Eleventh Amendment bars Plaintiff's claims under §§ 1981 and 1983. The Eleventh Amendment generally immunizes states from private damage actions in federal court. *Kroll v. Bd. of Trustees of Univ. of Ill.,* 934 F.2d 904, 907 (7th Cir. 1991); *see also Weston v. Ill. Dep't of Human Servs.*, 433 F. App'x 480, 482 (7th Cir. 2011). State agencies are subject to the same treatment as states. *Kroll*, 934 F.2d at 907. The rule applies unless, (1) the state unequivocally waives its Eleventh Amendment protection, thereby consenting to suit in federal court, or (2) Congress unequivocally states its intent to abrogate Eleventh Amendment immunity. *Id.* With respect to §§ 1981 and 1983, Congress has not conveyed unequivocal intent to abrogate the states' Eleventh Amendment immunity and Illinois has not waived its Eleventh Amendment protection. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (Congress had no intention of abrogating states' Eleventh Amendment immunity by enacting § 1983); *Joseph v. Bd. of Regents of the Univ. of Wis. Sys.*, 432 F.3d 746, 749 (7th Cir. 2005) ("Congress has not abrogated its immunity in § 1983 actions."); *Titus v. Ill. Dept. of Transp.,* 828 F. Supp. 2d 957, 967 (N.D. Ill. 2011) ("The State of Illinois has not waived its Eleventh Amendment immunity as it relates to Section 1981 claims nor has Congress abrogated immunity for Section 1981 claims."); *Perkins v. Bd. of Trustees of Univ. of Ill.,* No. 95 C 4320, 1996 WL 308292, at *1 (N.D. Ill. June 4, 1996) (finding no congressional intent to waive Eleventh Amendment immunity in § 1981).

Under these principles, the Court grants Defendant's motion to dismiss Plaintiff's §§ 1981 and 1983 with prejudice. *See, e.g.*, *Offor v. Ill. Dep't of Human Servs.*, No. 11 C 7296, 2013 WL 170000, at *3 (N.D. Ill. Jan. 16, 2013) (dismissing §§ 1981 and 1983 claims against

Illinois Department of Human Services); *Spain v. Elgin Mental Health Ctr.*, No. 10 CV 1065, 2011 WL 1485285, at *4 (N.D. Ill. Apr. 18, 2011) (same); *Titus v. Ill. Dep't of Transp.*, 828 F. Supp. 2d 957, 967 (N.D. Ill. 2011) (dismissing §§ 1981 and 1983 claims against Illinois Department of Transportation).

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiff's ADEA claim without prejudice and §§ 1981 and 1983 claims with prejudice and denies Defendant's motion to dismiss Plaintiff's Title VII claims.

**Dated:** November 30, 2017

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**